UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2017 NOV 14 P 3:09
DISTRICT COURT
HARTFORD CT

| | |
|---|---|
| IN RE APPLICATION OF THE ) <br> UNITED STATES OF AMERICA FOR ) <br> AN ORDER PURSUANT TO ) <br> 18 U.S.C. § 2703(d) ) <br> ) | MISC. NO. 3:17 MJ 1755 DFM <br><br> ~~Filed Under Seal~~ MJ6 <br> 11.14.17 |

APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Boost Mobile and T-Mobile, both cellular service providers, to disclose certain records and other information pertaining to the following cellular telephones:

- (401) 954-8546, an Alcatel Onetouch wireless telephone with MEID DEC 270113185015170544 and service provided by Boost Mobile,

- (505) 264-7635, a Samsung model SM-J320P wireless telephone with DEC 089070874400143760 and service provided by T-Mobile, and

- (830) 583-7612, an Apple iPhone with IMEI 354453065271713 and service provided by T-Mobile,

as described in Part I of Attachment A to the respective proposed Orders. The records and other information to be disclosed are described in Part II of Attachment A. In support of this application, the United States asserts:

LEGAL BACKGROUND

1. Boost Mobile and T-Mobile are providers of an electronic communications service, as defined in 18 U.S.C. § 2510(15). Accordingly, the United States may use a court

order issued under § 2703(d) to require Boost Mobile and T-Mobile to disclose the items described in Part II of Attachment A, as these records pertain to a subscriber of electronic communications service and are not the contents of communications. *See* 18 U.S.C. § 2703(c)(1).

2.  This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711(3). *See* 18 U.S.C. § 2703(d). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

3.  A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## THE RELEVANT FACTS

4.  On February 2, 2017, a grand jury charged Onel Arana-Gervacio ("Arana") with conspiring with several other persons – all of whom have since pleaded guilty – to possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846. The United States continues to investigate Arana's involvement in the subject narcotics trafficking conspiracy.

### The Alabama Car Stop on I-65

5.  On October 21, 2016, Deputy Sheriff Jason Kolbe ("Kolbe") of the Baldwin County Sheriff's Office was patrolling on I-65 in Alabama when he noticed a car hauler with an

expired license plate. The trailer was hauling a white 2012 Chevrolet Malibu, which did not have any license plate. Kolbe conducted a car stop and spoke to the driver, who stated that he had obtained the Malibu in Texas and was driving it to Atlanta. Kolbe obtained consent to search the Malibu and discovered after-market modifications to the underside of the Malibu, near the exhaust pipe. Based on Kolbe's training and experience, he concluded that the Malibu was equipped with a hidden compartment ("trap"). Kolbe ascertained that the Malibu was registered to Arana, 500 Airtex Boulevard, Houston, Texas.

6. Kolbe applied for and obtained court authorization to attach a GPS tracking device to the Malibu.

**The Malibu is Seen in Connecticut and Rhode Island**

7. On October 30, 2016, HSI investigators assisting with the monitoring of the GPS tracking device observed the Malibu parked in the area of 92-94 Health Street in Hartford, Connecticut. On November 1, 2016, law enforcement investigators confirmed that the Malibu was still parked in the area of 92-94 Heath Street.

8. On November 2, 2016, investigators applied for and were authorized to install another tracking device on the Malibu.

9. On November 12, 2016, HSI investigators surveilled the Malibu being off loaded from a trailer truck in the vicinity of 263 Northup Street, Cranston, Rhode Island. The Malibu was left in the street with no valid license plate. On November 14, 2016, another HSI special agent observed the Malibu parked in the driveway of 263 Northup Street, Cranston, Rhode Island. During the following days the vehicle was observed at this same location several times.

10. On November 21, 2016, law enforcement observed the Malibu in the driveway of 263 Northup Street, bearing a Texas registration of HLF-2841. Records checks indicate that this

plate is registered to Arana. A check through the National Crime Information System, Interstate Identification Index revealed that Arana has been arrested for immigration violations, driving while under the influence, and carrying a concealed weapon. The check further revealed a possible active warrant for an alias associated with Arana's FBI number in Lawrenceville, Georgia.

11.     Information provided by an HSI Intelligence Research Specialist indicates that in 2011, a confidential source told investigators that Arana was involved in the transportation of narcotics from Houston to Atlanta and Chicago. The source further reported that Arana was using vehicles with hidden compartments to transport narcotics and the proceeds to Mexico.

12.     On November 22, 2016, a Magistrate Judge in the District of Rhode Island authorized the HSI to maintain the GPS transmitter that was affixed to the Malibu.

13.     In December 2016, the Malibu remained at the Northrup Street location in Rhode Island. During that period of time, the license plate was removed. Investigators suspected that the Malibu was being prepared for a drug shipment.

### The Malibu is Delivered to Hartford on January 17, 2017

14.     On January 17, 2017, at approximately 1413, investigators saw the Malibu arrive at 1091 Maple Avenue in Hartford, Connecticut (hereafter "the residence"). The Malibu was removed from a Rhode Island towing company's flatbed. At approximately 1515, a green Nissan Altima bearing license plate AC-84356 was removed from the garage of the residence.

15.     The Malibu, bearing Texas plate HLF-2841, was then parked in the driveway of the residence. The Texas plate was removed from the Malibu and replaced with the Connecticut plate. The tow truck left the area.

16. As noted, Texas Department of Motor Vehicles indices show that HLF-2841 is registered to the Malibu under Arana's name. Connecticut DMV records show that AC-84356 is associated with a black 2000 Nissan Maxima that is registered to Jonason Aquino-Amparo of 415 Hillside Avenue, Hartford.

### The Events Leading to the Search of 1091 Maple Avenue Premises

17. On January 20, 2017, at 1425, surveillance officers observed Arana arrive at the residence in a flatbed tow truck. Arana removed a black 2011 Dodge Durango from the flatbed. A short while later, Erison Peralta and Modesto Barett-Medino (co-defendants who have pleaded guilty to the conspiracy charge) exited the residence. Surveillance agents observed these three men make two trips to an AutoZone. Between approximately 1618 and 1649, as Arana sat in the driver's seat of the Durango that was now parked on Maple Avenue in front of the residence, Barett-Medina and Peralta worked on the rear passenger side of the Durango in a manner consistent with manipulating a mechanical hidden compartment. Specifically, the Durango's windshield wipers, headlights and blinkers were activating in what appeared to be sequences consistent with an electronic hidden compartment.

18. At approximately 1623, Peralta came from the residence and appeared to be carrying an item beneath his coat to the Durango. At 1649, Peralta walked quickly from the Durango to the residence. He was carrying a heavily weighted green bag. The bag was subsequently found in the basement of the residence with several kilograms of heroin.

19. At approximately 1703 hours, the GPS, which was affixed to the Malibu that was parked in the garage of the residence, came out of "sleep mode" presumably because it detected motion on the Malibu, which led investigators to believe that someone was manipulating the hidden compartment of the Malibu and was jarring the vehicle while accessing the hidden

compartment. A short time later, Peralta returned back to the Durango and entered the rear passenger side.

20. At approximately 2031 hours, Arana was observed carrying two duffle bags and placing them in the rear compartment area of the Caravan. Arana then entered the front passenger side of the Caravan. Barett-Medina entered the driver's side of the Caravan and drove off. Investigators saw the Caravan run a red light at the intersection of Maple Avenue and Fairfield Avenue (a violation of CGS § 14-299) and also noted that the Caravan had an equipment violation in the form of a brake light out on the driver side rear tail lamp (a violation of CGS § 14-96e). Surveillance units relayed the observed motor vehicle infraction offenses to a marked patrol car, which conducted a motor vehicle stop.

21. Detective Jose Perez of the Hartford Police Department assisted in translating the conversation with the occupants of the Caravan. Detective Perez told Barett-Medina that the police had stopped the Caravan for motor vehicle violations and he asked Barett-Medina to step from the vehicle. Barett-Medina told Detective Perez that he was dropping his friend, who had just come from New York, at a motel. When asked what motel, Barett-Medina could not give an answer. Detective Jose Perez than asked Arana where he was coming from and where he was heading to. Arana informed Detective Perez that he just came from Providence and he was looking for a motel to stay for the night.

22. TFO Kashmanian utilized his narcotics detection K-9 Conner and walked him around the exterior of the Caravan. Conner alerted to the presence of narcotics odor on the driver's side door, the rear passenger side door, and the front passenger door. Barett-Medina gave verbal consent to search the vehicle. Conner entered the interior compartment of the Caravan and again alerted to the presence of narcotics on both front seats and both bags. Arana

told the officers that the bags were his and that they could search the bags. Inside one of the bags, TFO Kashmanian located an electric sander and primer paint. Based on TFO Kashmanian's training and experience, he believed that these items had been used to work on the hidden compartment on the Malibu, which was inside the garage of the residence.

23. TFO Kashmanian also recovered three cell phones from the passenger side of the dashboard that Arana had been sitting by. Arana stated the three phones were his. These three phones are the subject of the instant application: (a) (401) 954-8546, an Alcatel Onetouch wireless telephone with MEID DEC 270113185015170544 and service provided by Boost Mobile; (b) (505) 264-7635, a Samsung model SM-J320P with DEC 089070874400143760 and service provided by T-Mobile; and (c) (830) 583-7612, an Apple iPhone with IMEI 354453065271713 and service provided by T-Mobile.

24. At approximately 2107 hours, TFO's Kashmanian, Connecticut State Police Trooper Kudish, Detective Perez, HSI Special Agent Pasciucco, and several uniformed officers returned to the residence to speak with the occupants. As the investigators pulled up to the address, Agent Pasciucco saw Peralta by the bedroom window that overlooked the driveway. From this window, Peralta could clearly see law enforcement approaching the residence. Peralta then left window and disappeared from view.

25. TFO Kashmanian, Agent Pasciucco, and Detective Perez knocked on the front door of the residence. A woman identified as Luz Cruz answered the door. Detective Perez explained why the investigators were there and asked if they could come in. Cruz replied, "no, you cannot come in without a search warrant." Detective Perez asked her if investigators could come in and search the garage only. At that time, Cruz's 20-year old daughter Carol Amparo came to door and said, "no one can come in without a search warrant." TFO Kashmanian then

heard the distinct sound of a toilet flushing. Based on TFO Kashmanian's training and experience, he feared that drug evidence was being destroyed. Based upon these exigent circumstances, TFO Kashmanian pushed past the two women and ran to the bathroom on the second floor. He saw heroin in the bathroom, in the toilet and on the toilet seat. Several cell phones had also been thrown into the toilet tank.

26. Agents performed a quick security sweep and located Peralta hiding under a bed in the room adjacent to the bathroom. The agents also saw, in plain view in the basement, heroin packaged for distribution, a heroin press, and the Malibu parked in the garage. In addition, a Connecticut State Police trooper and his K9 Suri alerted to the presence of narcotic odor when he conducted an exterior sweep of the Durango, which was parked in the driveway of the residence.

### The Search of the Residence at 1091 Maple Avenue and Two Cars

27. Law enforcement officers secured the premises, contacted the United States Attorney's Office and arranged to obtain a search warrant. The searched commenced at approximately 0209 in the morning of January 21st. Cruz advised that she rents the residence and that she lived there with her daughter, Amparo. Search team members found personal items, photographs, and mail consistent with both Cruz and Amparo being residents.

28. In the basement, search team members located a large, square plate of glass on top of an old washing machine that was being used as a tabletop to cut heroin. The glass was covered with powder heroin, and drug paraphernalia. In addition, the floor area near the oven was covered with powder heroin in a manner consistent with someone being startled and dropping the heroin on the floor. A boot print was clearly identifiable in the heroin. Peralta, who had been found hiding underneath a bed in the room adjacent to the bathroom, was wearing boots that had

heroin on them. The soles of Peralta's boots match the footprint found in the heroin located on the basement floor.

29. The search team also located a finger-press in the basement near the oven. The finger press had fresh heroin residue on it, and was loaded to process six heroin fingers per "press." Directly next to the press, search team members found 30 fingers of heroin that had already been processed (pressed into "fingers"). In addition, search team members located several bricks (kilograms) of heroin near the finger-press. Several of these kilograms were inside a green bag that appeared to be the same bag that agents earlier had seen Peralta carry from the Durango into the residence. The search team also located cocaine in the basement.

30. The contraband has subsequently been tested by the DEA laboratory. Agents seized more than 6½ kilograms of heroin, 3 of which also contained fentanyl. The agents also seized a kilogram of cutting agents frequently used to dilute heroin.

31. The basement where the contraband was located is connected to a one car garage. Search team members located Arana's Malibu in the garage. The trap that Deputy Sheriff Kolbe had discovered in October 2016 was found to contain approximately $260,000.

32. A search of the Durango confirmed that it was equipped a hidden mechanical compartment under the third row seat. The trap was empty, however. As noted, surveillance agents had seen items being taken from the Durango into the residence earlier in the day.

33. On February 2, 2017, a federal grand jury returned an indictment against Ms. Cruz and Messrs. Peralta, Barett-Medina and Arana. These four defendants were charged with, among other things, conspiring to possess with intent to distribute and to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846. Since then, Peralta and Barett-Medina have

pleaded guilty to being involved in the conspiracy; Cruz has pleaded guilty to maintaining a drug-involved premises in violation of 21 U.S.C. § 856.

34. Based on the investigation, Arana is a citizen of Mexico and is in the United States illegally. While he has ties to the Houston area, it does not appear that he has any legitimate connection to New England, specifically Rhode Island or Connecticut. It would be highly relevant and material to the government's ongoing investigation to determine when Arana was in the northeast. The instant application seeks, among other things, historical cell tower information that would allow investigators to ascertain on what dates last fall and earlier this winter – if any – that Arana's cellular telephones were in Rhode Island and Connecticut, during a period when a major drug trafficking conspiracy was continuing.

## REQUEST FOR ORDER

35. The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate Arana, who is charged with being involved in the events described above, and to determine the nature and scope of his activities. Accordingly, the United States requests that Boost Mobile and T-Mobile be directed to produce all items described in Part II of Attachment A to the proposed Orders.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

*/s/ Michael J. Gustafson*

MICHAEL J. GUSTAFSON
ASSISTANT UNITED STATES ATTORNEY
157 CHURCH STREET, 25TH FLOOR
NEW HAVEN, CT 06510